UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
GARY APPLE,

                Plaintiff,

   -against-                                     24-cv-04380 (OEM) (RML)

THE DEPARTMENT OF EDUCATION
OF THE CITY OF NEW YORK,

                Defendant.
---------------------------------------------------------X

## AMENDED COMPLAINT AND JURY DEMAND

Plaintiff Gary Apple, by his attorney, STEWART LEE KARLIN, LAW GROUP, PC., by and through their undersigned counsel for his complaint herein alleges as follows:

## FIRST CLAIM FOR RELIEF-IDEA

**Nature of the Proceeding**

1. The proceeding is an enforcement action pursuant to the Individual with Disabilities Act ("Hereinafter "IDEA"), 20 U.S.C. § 1415 (I) (2) (a) from a series of favorable Impartial Hearing decisions in which the Defendant Department of Education of the City of New York (hereinafter the "DOE or Defendant") was ordered to reimburse Plaintiff for tuition but refused to do so.

2. Defendant is in violation of the IDEA, and the laws of the State of New York which require that children with disabilities receive an appropriate and adequate education and not to be intentionally discriminated against due to a disability and be reasonably accommodated.

## THE PARTIES

3. Plaintiff Gary Apple is the father of EA.

4. Defendant DOE is charged by law with the responsibility for the operation, management and control of public education within the City of New York. Among the School Board's duties are responsibility pursuant to IDEA and New York law, for providing a FAPE to all children who reside within the City of New York including Plaintiff Apple's daughter. The DOE is further responsible for finding children with disabilities and providing them with an appropriate IEP and following the Impartial Hearing decision including decisions that require reimbursement.

## JURISDICTION AND VENUE

5. This court has concurrent jurisdiction over the subject matter of this proceeding pursuant to IDEA, 20 U.S.C. §1415, (I) (2) (A).

6. Venue lies in Kings County in that the DOE principal place of business is in Kings County.

## FACTUAL STATEMENT

7. Plaintiff seeks recovery of the tuition at the Robert Louis Stevenson School for the 2019-2020 school year for Mr. Apple's daughter EA. The 2019-202 year was not reimbursed after Mr. Apple paid the tuition in full despite repeated attempts by Plaintiff and his advocate to obtain an Impartial Hearing. The Department insisted there were no hearings scheduled due to COVID, thus refusing to comply with IDEA by not scheduling an impartial hearing as required under the law.

8. The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." Bd. Of Educ. V. Rowley, 458 U.S. 176, 179-91 (1982). Implicit in the congressional purpose of providing access to a free and appropriate public education (hereinafter "FAPE") is the requirement that the education to

      which access is provided be sufficient to confer some educational benefit upon the handicap child. (Id.)

9.   Pursuant to 20 U.S.C. §1401(9) and 34 C.F.R. §300.17 FAPE is defined as follows:

> Special Education and related services that are provided at public expense under public supervision and direction and without charge; meet the standards of the SEA… include an appropriate preschool, elementary school, or secondary school education in the State involved; and are provided in conformity with the individualized education program (IEP).

10.   In determining the appropriate placement for a child, preference is given to the least restrictive environment and the appropriate schools nearest the child's home (Id.). The IDEA requires that unless the IEP of a child with a disability requires some other arrangement, the child is to be educated in the school that he or she would attend if the student was otherwise not disabled. In selecting the least restrictive environment, consideration is given to any potential harmful effect on the child or on the quality of the services that he or she needs. A child with a disability is not removed from education in age-appropriate regular classrooms solely because of needed modifications in the general education curriculum. See 34 C.F.R. § 300.116.

11.   Where a school system fails to provide special education or related services to a student with a disability, the student is entitled to compensatory education, "i.e., replacement of educational services the child should have received in the first place." Reid v. District of Columbia, 401 F.3d 516 (D.C. Cir. 2005). An award of compensatory education "should aim to place the disabled children in the same position they would have occupied but for the school district's violations of IDEA" (Id.). Compensatory education is a remedy for "past deficiencies" therefore a finding as to whether a student was "denied a FAPE in the

relevant time period is a necessary prerequisite to a compensatory education award." <u>Peak v. District of Columbia,</u> 526 F. Supp. 2d 32 (D.C. Cir. 2007).

12. Pursuant to New York Education Law § 4401(c)(1) the DOE shall have the burden of proof, the burden of persuasion, and the burden of production in impartial hearings except for instances where the parent is seeking tuition reimbursement for a unilateral parental placement and in those cases the parent shall have the burden of persuasion and the burden of production as to the appropriateness of the placement. The burden of proof in matters such as this shall only be met upon a fair preponderance of the evidence. The preponderance of the evidence standard requires that the trier of fact to find that the existence of a fact is more probable than its nonexistence. <u>Concrete Pipe & Products of California, Inc. v. Construction Laborers Pension Trust for Southern California,</u> 508 U.S. 602, 622 (1993).

13. A court or a hearing officer may order a district to reimburse the parents of a student with a disability for the student's unilateral private placement if the district failed to make a FAPE available in a timely manner and the unilateral private placement is appropriate, 34 CFR 300, 148 (c); <u>Florence County Sch. Dist. Four v. Carter</u>, 20 IDELR 532 (US 1993). A unilateral private placement is appropriate for reimbursement purposes if it offers instruction that is specially designed to meet the student's unique needs as well as the support services the student requires to benefit from that instruction, <u>M.N. v. State of Hawaii, Dep't of Educ.,</u> 60 IELR 181 (9th ir. 2013, unpublished); <u>Ward v. Board of Education of the Enlarged City Sch. Dist. Of Middletown, NY</u>, 63 IDELR 121 (2d Cir. 2014, unpublished).

14. In the case brought herein for payment reimbursement, Defendants did not challenge the appropriateness of the unilateral placement. Moreover, there was a clear demonstration that the unilateral placement chosen by the Parent was appropriate. Mr. Apple won full tuition reimbursement by direct payment for the other years that EA attended Robert Louis Stevenson High School, namely 2017-2018, 2018-2019, 2020-2021, and 2021-2022. Specifically, the evidence would demonstrate that RLS engaged Student in classes, programs and related services which were specifically tailored to address Student's needs and challenges. The student was provided with numerous accommodations and afforded the opportunity to engage in both individual and small group instruction, and related services providers that collaborated with her classroom teacher.

15. Mr. Apple's daughter was a student at the iSchool, a public school, at the beginning of 2017. Every day was a struggle at the iSchool. She was placed in every type of class configuration, dealt with numerous school counselors and psychologists, and her parents attended countless meetings with faculty and administrators. Though Student is a lovely and kind child, she had no friends, and experienced her days in isolation. She was bullied, not invited to parties, and did not attend school functions. She was not misbehaving but shutting down. Because Student is different and has special challenges, over the years she had grown separated from her peers and began to exhibit self-harm.

16. As far as EA's performance and grades at the iSchool were concerned, early on it became clear that she was failing. Yet, despite this very early indication things were going poorly, none of the teachers or staff reached out to the parents to discuss the situation and come up with possible solutions. Time after time, the parents sent emails to the staff, pleading for

more information and meetings to discuss ways to help EA. Usually these emails were not answered, and no one ever requested that the parents come in to discuss EA's needs.

17. The parents' efforts to keep EA in the public-school setting worked out terribly. Despite all their efforts to work with the NYC Department of Education and the CSE, the results were poor. EA's needs were simply not being met.

18. In the fall of 2017 EA's parents were in despair. The public-school system simply had not been able to get through to her. In the Fall of 2017, the parents concluded that in the proper environment, Student could experience educational success, friendship, bonding, and the self-esteem that had eluded her over the many years in the public-school system. The parents were not critical of the NYC public school system in general. Indeed, Student's twin sister continued to thrive in public school, but Student was doing just the opposite.

19. The parents and Student toured schools and found Robert Louis Stevenson. They were very impressed with the school's approach and felt confident that EA's emotional and psychological needs would be met along with her scholastic goals.

20. Thereafter an Impartial Hearing request was made by Mr. Apple and his Advocate in December 2017 for reimbursement of the tuition at RLS for November 2017-June 2018, $50,000.

21. The DOE agreed that they had not provided Student with FAPE, and the NYC Department of Education had no alternative setting to recommend.

22. On March 1, 2018, the Department informed the Advocate, Betsy Combier, that Impartial Hearing case #171299 had been recommended for settlement. All parties signed a settlement agreement on August 7, 2018.

23. Mariam Mahmood Qureshi, Director of the Special Education Unit in the Office of the General Counsel of the NYC Department of Education signed the final Stipulation of Settlement for the case #171299, and Arbitrator Mindy Wolman signed an Order of Termination on August 23, 2018. The parents received a check for $50,000 after submitting all the required documents.

24. On May 16, 2018, the new psychoeducational evaluation of Student by Dr. Sonel Rowley and Dr. Peter Pramataris at Lenox Hill Hospital was received by Mr. Apple.

25. On May 29, 2018, the parent advocate sent an email to CSE 10 on West 125th Street in Manhattan asking for an IEP meeting. No response was ever received. No IEP meeting was set up by the CSE, and no alternative placement for Student was sent from the Department.

26. Mr. Apple requested an Impartial Hearing in October 2018. In March, tragedy struck Student's family when her mother suffered a brain aneurism and was incapacitated. EA and her sister moved into their father's apartment (the parents were divorced) and the father, Mr. Apple, obtained custody.

27. Impartial Hearing #178252 was held on December 21, 2018, in front of Arbitrator Edgar De Leon. Parent Advocate requested $6,950 for the July 2018 summer school session, and $69,500 tuition for the school's tuition 2018-2019. At the Hearing the Department brought in one person to testify, Ms. Ann Metroka. Ms. Metroka and the Department submitted the SESIS Event Log (Entry #8, dated 12/14/18) for Student's case which showed that Ms. Metroka had called Student's mother to discuss the case, and Ms. Metroka was told by mom that an IEP was not necessary, but to please speak with the Advocate. No calls were made to the Advocate by Defendant. The Advocate, Betsy Combier, had told Ms. Metroka

7

immediately following the medical emergency and brain aneurism of EA's mom, not to call the mother. In direct disregard of this request, Ms. Metroka called the mom.

28. On this SESIS report submitted by the Defendants in their case was an entry showing that Ms. Metroka had deleted Student's case log from the database in or about mid-April 2018.

29. On April 30, 2019, Arbitrator Edgar De Leon issued the following Decision:

> "ORDERED that upon reasonably satisfactory proof of services having been rendered, the DOE shall either reimburse the Parent or directly pay the cost of the student's tuition at the private school for the 2018-2019 school year as follows: July 2018 Summer Session at the private school ($6,950) and tuition reimbursement and/or direct payment for the student's 2018-2019 academic year at the private school ($69,500), totaling: $76,450; and it is further
>
> ORDERED that the CSE shall forthwith reconvene to produce a new IEP for the student that considers all of the student's available evaluations and any related services that he should receive for the 2019-2020 school year."

30. Defendant did not Appeal the final Order of HO de Leon.

31. The required documents (Student's grades, attendance, progress reports and financial data on checks sent for the entire amount of tuition 2018-2019) were submitted to the NYC Department of Education on or about the middle of May 2019, about two weeks after the decision was issued. The Decision of Edgar De Leon ordered that Gary Apple receive direct payment of $76,450 for the 2018-2019 school year, and that the DOE convene an IEP for Emily Apple with all the services she should receive for 2019-2020.

32. Reimbursement for 2019-2020 and the lack of payment by the Department after the decision in Case #178252 in 2019.were put on hold due to the pandemic.

8

33. As the DOE submitted to the Hearing Officer Edgar De Leon included a SESSIS notation that Emily Apple's case had been closed, Betsy Combier ( Hereinafter "Parent Advocate") made calls to Ann Matroka starting in June 2019 about an IEP meeting and about the opening of Emily's case after Metroka and Maurice Collins had closed her case in error.

34. The Parent Advocate called her June 17, 21, and 26 2019 but did not receive a response.

35. Thereafter, on June 27, 2019, the Parent Advocate called CSE and they told her that Ann Matroka was not at the DOE CSE 10 any longer.

36. The Parent Adocate looked up her placement on Google, and found out that Ann Metroka was listed as the contact person at the NYC DOE Division of Specialized Instruction and Student Support for Spring 2019 Approved Preschool Multi Disciplinary Evaluation (MDE) Sites. On this page, Ms. Metroka is listed as the contact for the Northside Therapeutic Early Childhood Center at 1301 Fifth Avenue, NYC 10029, (212-426-3460, 212-426-8976).

37. The Parent Advocate called those numbers, but did not receive a response.

38. Thereafter, the Parent Advocate tried to reach Maurice Collins, listed in SESSIS.

39. On September 10, 2019, the Parent Advocate called the CSE to set up an IEP meeting. However, she was advised that someone would get back to her.

40. The Parent Advocate called again September 20; October 24, 30, Nov 19, and 2, 2019.

41. The Parent Advocate called CSE December 20, 2019 and was told someone would get back to her but no one did.

42. In February 2020, the Parent advocate called the Impartial Hearing Office in Brooklyn because she had submitted a request for a hearing for the tuition for Emily Apple for 2019-2020 and not heard back. The NYC DOE was supposed to reply in 5 days, confirming

<ol start="42">
<li>

receipt. The IHO contact person told the Parent Advocate that the Impartial Hearings had been put on hold due to COVID, and no Hearings would take place until probably January 2021.

</li>
<li>

The CSE never contacted Gary Apple or the Parent Advocate for the IEP meeting until March 2021. The meeting was finally held March 16, 2021. The CSE recommended a public-school placement that was inappropriate. Mr. Apple and his Advocate were told that no Impartial Hearings were being held until April 2022.

</li>
<li>

On July 26, 2022, Impartial Hearing Officer Steven Forbes told Advocate Betsy Combier that he would hear the reimbursement case for 2020-2021 and 2021-2022, but not for 2019-2020, as he can only hear tuition reimbursement for two years.

</li>
<li>

From April 2019 to September 2022, Mr. Apple and his Advocate made countless calls to CSE 10, the Impartial Hearing Implementation Office and others at the NYC Department of Education, including the Office of Special Education Policy, Contracts and Purchasing, non-public schools' payments, and the Committee For Special Education asking for the status of the reimbursement.

</li>
<li>

Mr. Apple and his Advocate continued to try to reach anyone at the non-public payables' office, all in vain. As stated above, the CSE finally scheduled an IEP meeting in March 2021 and sent a placement letter to Mr. Apple, who did not accept it. The Life Sciences School on East 96th Street could not offer Student a FAPE.

</li>
<li>

Thereafter, Plaintiff continue to request and impartial hearing through 2022. However, the defendant refused to schedule an impartial hearing.

</li>
<li>

A court or a hearing officer may order a district to reimburse the parents of a student with a disability for the student's unilateral private placement if the district failed to make a

</li>
</ol>

FAPE available in a timely manner and the unilateral private placement is appropriate, 34 CFR 300, 148 (c); <u>Florence County Sch. Dist. Four v. Carter</u>, 20 IDELR 532 (US 1993).

49. As a result of the foregoing conduct by the School Board, the School Board has violated IDEA 20 U.S.C. § 1400 et. seq. and the regulations promulgated pursuant to IDEA and as result plaintiff has been damaged for the tuition reimbursement for the 2019-2020 school year in the amount of $79,090 and any other relief that is fair and proper.

50. Plaintiff is also seeking a reasonable attorney fee and costs and expenses.

WHEREFORE, it is respectfully requested for the aforementioned reasons that a judgment be made declaring for the aforementioned reasons that IDEA has been violated and that the DOE be ordered to reimburse the Plaintiff for the tuition reimbursement to Plaintiff in the amount of $79,090 or in the alternative order an impartial hearing be conducted, plus attorney fees, costs and expenses and any other relief that is fair and proper.

**PLAINTIFF HEREIN DEMANDS A JURY TRIAL**

Dated: New York, New York
September 30, 2024

STEWART LEE KARLIN
LAW GROUP, P.C.

_____
Stewart Lee Karlin, Esq.
*Attorneys for Plaintiff*
111 John St., 22nd Floor
New York, NY 10038
(212) 792-9670
slk@stewartkarlin.com

11